**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBRA V. GARDNER-LOZADA,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **SEPTA,** | : | |
| *Defendant*. | : | **No. 13-2755** |
| | : | |

PRATTER, J.                                             NOVEMBER 21, 2014

**MEMORANDUM OPINION**

Debra Gardner-Lozada alleges that SEPTA engaged in gender discrimination (Counts I and III) and retaliation (Counts II and IV) under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, when it failed to promote her to the following three positions: (1) Director of Railroad Service – Operations Division (May 2012) ("Operations Director"); (2) Senior Director of Railroad Services – Operations (January 2013) ("Senior Director"); and (3) Director of Railroad Services – Personnel Assignment Office (July 2013) ("PAO Director"). SEPTA moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the Court will grant SEPTA's motion as it relates to the Senior Director and PAO Director positions, but deny the Motion as it relates to the Operations Director position.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

#### A. MS. GARDNER-LOZADA'S PRIOR LAWSUIT

In October 1999, SEPTA awarded Ms. Gardner-Lozada a Management Analyst (grade 40) position in its Railroad Division. In 2007, after Ms. Gardner-Lozada was assigned additional

---

[1] The facts are undisputed unless expressly noted. Where there is a factual dispute, as long as Ms. Gardner-Lozada has record support for her position, the facts are viewed in the light most favorable to her.

duties without additional compensation, she formally requested that her position be reclassified as grade 42. SEPTA changed her title to Assistant Director, Railroad Service for Railroad Revenue Operations, but it remained at grade 40.

In September 2008, Ms. Gardner-Lozada filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that SEPTA refused to raise her position to grade 42 because of her gender. After amending her Charge in February 2009, Ms. Gardner-Lozada filed a federal gender discrimination lawsuit against SEPTA in July 2009. In July 2010, Ms. Gardner-Lozada accepted SEPTA's offer of judgment in the amount of $90,000.

The parties agree that after the settlement, Ms. Gardner-Lozada applied unsuccessfully for four positions: (1) Director of Transportation – Bus Operations (November 2011);[2] (2) Operations Director (May 2012); (3) Senior Director (January 2013); and (4) PAO Director (July 2013). Ms. Gardner-Lozada claims that she was denied the latter three promotions for discriminatory and retaliatory reasons.

B.    SEPTA'S HIRING PROCESS

Ordinarily, when a vacancy opens at SEPTA, the Manager looking to hire informs SEPTA's Recruitment Department of the vacancy. SEPTA's Recruitment Department then prepares a "Requisition for Personnel Form," and submits it through an established approval process. As part of the approval process, the Equal Employment Opportunity/Affirmative Action ("EEO/AA") and Employee Relations Department identifies any affirmative action goals for the

---

[2] In October 2011, Ms. Gardner-Lozada applied for one of two open positions of Director of Transportation – Bus Operations. Ms. Gardner-Lozada was selected to interview for the positions, but the interview panel offered the positions to two male candidates. Ms. Gardner-Lozada challenges whether the male candidates were the "most qualified" rather than the best performers during the interview stage, but she does not allege that SEPTA's failure to promote her in 2011 was retaliatory or discriminatory.

vacant position. After the Request for Personnel Form is approved, a Recruiter prepares a posting to advertise the vacant position.

The parties disagree about two key aspects of SEPTA's hiring process. First, SEPTA claims that before the job opening is posted, the Recruiter meets with the Hiring Manager and an EEO/AA representative to *review* the job description. (Statement of Uncontested Material Facts ("SUMF") ¶ 16). Ms. Gardner-Lozada claims that the meeting is to *finalize* the job description to be posted, not merely to discuss the position. (Resp. to SUMF ¶ 16). Second, SEPTA claims that it generally chooses to interview only the most qualified applicants. (SUMF ¶ 18). Ms. Gardner-Lozada claims that all applicants meeting the minimum qualifications are normally selected for interviews. (Resp. to SUMF ¶ 18).

At the interview, the same interview panel asks each of the applicants the same set of questions and ranks their responses based on established selection criteria. The rankings are then inserted into a document called the Consensus Panel Ranking Chart, and the highest-ranked candidate is selected for the position.

C.    OPERATIONS DIRECTOR

In February 2012, James Johnson, Senior Director of Railroad Service Operations, initiated the hiring process to fill the vacant Operations Director position. The previous Operations Director had been certified by the Northeast Operating Rules Advisory Committee ("NORAC"), but NORAC qualification was not a requirement listed on the job posting.[3]

SEPTA claims that the Recruiter (Odessa Finney, an African-American female), the Director of EEO/AA and Employee Relations (Lorraine McKenzie, an African-American female), and Mr. Johnson discussed the issue of NORAC qualification at the pre-posting meeting. According to SEPTA, they decided that the NORAC qualification would be used to

---

[3] NORAC promulgates a set of Operating Rules that govern the operation of railroads.

3

determine which applicants were most qualified, and only the most qualified applicants would be invited to interview for the position. (SUMF ¶ 46-47). Ms. Gardner-Lozada disputes SEPTA's description of the pre-posting meeting, arguing instead that any additional qualifications required during the pre-posting meeting would have been added to the actual job posting. (Response to SUMF ¶ 48).

From March 8, 2012 to March 15, 2012, SEPTA posted an internal vacancy for the Operations Director position. Ms. Gardner-Lozada applied for the position on March 13, 2012. She was the only female applicant for the Operations Director position.

On April 6, 2012, Ms. Finney, Mr. Johnson, and Affirmative Action Officer Carole O'Neal (an African-American female) reviewed the applications. They offered six NORAC-qualified male candidates the opportunity to interview for the Director of Operations position, but they did not invite Ms. Gardner-Lozada to interview. On the Prospective Employee Processing Form, a document used to determine which applicants will advance to the interview stage, Ms. Finney indicated that Ms. Gardner-Lozada was one of the most qualified candidates and would be granted an interview. (*See* Pl.'s Ex. 27). However, that marking was ultimately crossed off and Ms. Gardner-Lozada was not invited to interview for the position. *Id.*

Robert McGowan, a male SEPTA employee who applied for the Operations Director position, learned in late April that he was not invited to interview because he lacked the NORAC qualification. On April 30, 2012, Mr. McGowan submitted a memorandum to SEPTA's Human Resources requesting to interview because although he was not NORAC certified, he had significant railroad experience and would be willing to become NORAC certified if hired. SEPTA also claims that Mr. McGowan was once NORAC certified. SEPTA ultimately decided to interview Mr. McGowan for the Operations Director position, even though he was not

NORAC certified at the time he applied. Ms. Gardner-Lozada disputes that Mr. McGowan was ever NORAC certified. (Response to SUMF ¶ 60).

Mr. Johnson, Director of Operations Kim Kennedy (female), and Bernard Koch (male) ultimately conducted the interviews and awarded the position to Richard Mahon. Ms. Gardner-Lozada learned that she was not selected to interview for the position in late May 2012.

D.   SENIOR DIRECTOR

In October 2012, Chief Rail Transportation Officer James Foley submitted a Requisition for Personnel Form to fill the vacancy for the position of Senior Director. SEPTA posted internally for the vacant Senior Director position in November 2012. Eight internal candidates applied for the position and six, including Ms. Gardner-Lozada, were selected to interview. Ms. Gardner-Lozada was the only female applicant selected for an interview.

In December 2012, a three-person panel (including Mr. Foley and one female) interviewed Ms. Gardner-Lozada. SEPTA claims that all candidates were asked the same questions and all candidates were evaluated using the same selection criteria. Ms. Gardner-Lozada has presented no evidence to suggest otherwise. The Consensus Panel Ranking Chart placed Jack Lauser as the highest ranked candidate for the position. Ms. Gardner-Lozada testified that Mr. Lauser was initially given the Senior Director position in January 2012 without a competitive process, but that the decision was reversed after several people complained. (*See* Pl.'s Dep., vol. 1, at 117-121; 125-128). She claims that Mr. Lauser "was given preferential treatment" and that the interview process was "a sham to cover-up the fact that Mr. Lauser was the 'chosen one' by Mr. Foley for the Senior Director position." (Resp. to SUMF ¶ 87). Ms. Gardner-Lozada also claims that Mr. Lauser had a competitive edge because he had been reporting directly to Mr. Foley since January 2012. (*See* Pl.'s Dep., vol. 1, at 130-131). Apart

from this alleged nepotism, Ms. Gardner-Lozada does not point to any facts to suggest discrimination or retaliation in this hiring decision.

      E.    PAO DIRECTOR

In February 2013, Mr. Foley submitted a Requisition for Personnel Form to fill the vacant PAO Director position. Mr. Lauser was designated as the Hiring Manager. SEPTA posted internally for the vacant PAO Director position in April 2013. Seven internal candidates applied for the position and four, including Ms. Gardner-Lozada, were selected to interview. Ms. Gardner-Lozada was the only female applicant selected for an interview.

In June 2013, a three-person panel (including Mr. Lauser and one female) interviewed Ms. Gardner-Lozada. Mr. Lauser testified that he and a female SEPTA employee developed the questions and suggested responses for the interviews, and that each candidate was asked the same questions during the interviews and evaluated using the same selection criteria. At the conclusion of the interviews, the panelists determined that William Cantwell was the highest ranked candidate for the position. SEPTA offered the job to Mr. Cantwell in July 2013, and notified Ms. Gardner-Lozada that she was ranked second out of the four candidates.

Ms. Gardner-Lozada claims that the interview was stacked in favor of Mr. Cantwell because several of the questions specifically related to duties with which Mr. Cantwell was uniquely familiar and that were within his previous job description. (Pl.'s Resp. to SUMF ¶ 102-03). Apart from this alleged nepotism, Ms. Gardner-Lozada does not point to any facts to suggest discrimination or retaliation in this hiring decision.

      F.    PROCEDURAL HISTORY

On June 14, 2012, Ms. Gardner-Lozada filed a Charge of Discrimination with the EEOC and cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (*See* Def.'s Ex.

39). The EEOC confirmed receipt of the Charge by letter dated October 4, 2012. (*See* Def. Ex. 40). On February 18, 2013, Ms. Gardner-Lozada requested a "Right to Sue" letter. (*See* Def. Ex. 52). Ms. Gardner-Lozada filed the Complaint on May 20, 2013 and filed the Amended Complaint on October 9, 2013. The Amended Complaint added claims alleging that SEPTA refused to hire Ms. Gardner-Lozada to the Senior Director and PAO Director positions for discriminatory and retaliatory reasons.

## II.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's

initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

   B.   *McDonnell Douglas* Burden-Shifting Framework

   Because Ms. Gardner-Lozada does not claim to have direct evidence of gender discrimination or retaliation, the case will be analyzed in the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] Under *McDonnell Douglas*, if a plaintiff establishes a *prima facie* case of discrimination or retaliation, *see infra* Part III.B-C, the defendant must "articulate some legitimate, nondiscriminatory [or non-retaliatory] reason for the adverse employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). The plaintiff then has the burden of showing that the defendant's proffered reasons for the adverse action are pretextual. At the summary judgment stage, the plaintiff must meet this burden by submitting "evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination [or retaliation] was more likely

---

[4] Claims under Title VII and the PHRA are analyzed under the same burden-shifting framework. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995).

than not a motivating or determinative cause of the employee's termination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). Finally, in deciding a dispositive motion under the *McDonnell Douglas* framework, the Court recognizes that "evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [the Court] to ration the evidence between one stage or the other." *Doe*, 527 F.3d at 370.

### III.   DISCUSSION

#### A.   FAILURE TO EXHAUST

SEPTA argues that Ms. Gardner-Lozada failed to exhaust her administrative remedies with respect to the Senior Director and PAO Director positions. Plaintiffs filing suit under Title VII and the PHRA must exhaust administrative remedies by filing a Charge of Discrimination with the EEOC and the PHRC. *See Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997). However, "[a] victim of discrimination is not required to exhaust administrative remedies with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, provided that the victim can still bring suit on the earlier complaint." *Waiters v. Parsons*, 729 F.2d 233, 235 (3d Cir. 1984). Plaintiffs are not limited by the scope of the actual EEOC investigation, but rather "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976) (internal citations omitted). Therefore, the

Court will "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis" to determine whether a claim not expressly included in a Charge of Discrimination may nevertheless proceed in district court. *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997).

Ms. Gardner-Lozada's Charge of Discrimination, cross-filed with the EEOC and the PHRC, alleged sex discrimination and retaliation only in connection with SEPTA's refusal to hire her to the Operations Director position in May 2012. (*See* Def.'s Ex. 39). The Charge did not mention the Senior Director or PAO Director positions and the EEOC's actual investigation did not address those positions.[5] The Charge lists the latest date of discrimination as April 2012—before SEPTA refused to hire Ms. Gardner-Lozada to the Senior Director or PAO Director positions—and does not list the discrimination as a continuing action. *See id.* However, Ms. Gardner-Lozada concluded her Charge by alleging generally that SEPTA "treats male employees more favorably than her and has subjected her to discrimination because of her gender and retaliation for engaging in protected activities under Title VII and the PHRA." *Id.*

Despite the fact that Ms. Gardner-Lozada's Charge did not mention the Senior Director or PAO Director positions, she exhausted her administrative remedies with respect to those claims because they are fairly within the scope of the Charge. The Third Circuit Court of Appeals' decision in *Waiters* is instructive on this point. In *Waiters*, the plaintiff filed a complaint with the EEOC alleging retaliation. *Waiters*, 729 F.2d at 235. When the plaintiff later

---

[5] Ms. Gardner-Lozada argues that "SEPTA did not present before this Court the complete EEOC investigation records," (Pl.'s Br. at 8), but she fails to point to any portion of the EEOC record suggesting that the scope of the Charge or investigation covered any employment decisions beyond the Operations Director position. SEPTA bears the burden of proving that Ms. Gardner-Lozada failed to exhaust her administrative remedies, *see Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997), but Ms. Gardner-Lozada may not rely on allusions to unidentified portions of the EEOC investigation records to survive summary judgment on the issue of exhaustion, *see El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

filed suit in district court, he added a claim that he was fired based on the same retaliatory intent. *Id.* at 236. Our Court of Appeals held that the plaintiff could bring the claim for retaliatory discharge even though that claim was not presented to the EEOC, and even though "the allegedly discriminatory officials and acts are different," because "the core grievance—retaliation—is the same . . . ." *Id.* at 238. In such cases, "the policy of promoting conciliation would not be furthered by allowing the defendants to delay having to answer in court for retaliatory action allegedly taken against appellant for asserting her rights." *Id.*

Here, the reasoning of *Waiters* compels the Court to permit Ms. Gardner-Lozada to bring her claims. Ms. Gardner-Lozada's Charge alleged that SEPTA engaged in discriminatory and retaliatory conduct, and the additional claims she wishes to bring are additional instances of alleged discrimination and retaliation that occurred after the Charge was filed. Thus, a reasonable EEOC investigation of Ms. Gardner-Lozada's Charge would have encompassed SEPTA's subsequent failures to promote Ms. Gardner-Lozada, which she claims were the result of discrimination and retaliation. Although SEPTA argues that the decision not to promote Ms. Gardner-Lozada was made by different interview panels at different times, "the core grievance—retaliation [and gender discrimination]—is the same." *Id.* Under the circumstances presented in this case, those facts go to the merits of Ms. Gardner-Lozada's claims rather than the issue of exhaustion. As a result, there is sufficient evidence from which a reasonable jury could conclude that a reasonable EEOC investigation would have encompassed all the alleged acts of discrimination and retaliation that arose after the Charge was filed and the Court will consider those claims.[6] While failing to amend a Charge of Discrimination to reflect subsequent acts of

---

[6] Ms. Gardner-Lozada relies on two cases to argue that there is no exhaustion problem, but both cases are inapposite. In *Rajis v. Brown*, No. 96-6889, 1997 WL 535152 (E.D. Pa. Aug. 14, 1997), the plaintiff alleged a "series of antagonistic events . . . in her administrative complaint" for failure to promote. *Id.* at *5. The defendant moved to dismiss the plaintiff's

alleged discrimination or retaliation is hardly the best practice, Ms. Gardner-Lozada's failure to amend will not bar her claims in this case.

     B.    GENDER DISCRIMINATION

    Ms. Gardner-Lozada alleges that SEPTA denied her three promotions and increased her workload without additional compensation because she is female. A plaintiff may establish a *prima facie* discrimination claim by showing that (1) she belongs to a protected class; (2) she was qualified for a position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances that raise an inference of discrimination. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). For purposes of summary judgment, it is undisputed that Ms. Gardner-Lozada is a member of a protected class (female), is qualified for each position, and suffered adverse employment actions (failure to promote). Consequently, the only remaining issues are (1) whether Ms. Gardner-Lozada has introduced sufficient evidence from which a reasonable jury can conclude that the alleged adverse employment actions occurred under circumstances that raise an inference of discriminatory action, (2) if so, whether SEPTA has articulated legitimate, nondiscriminatory reasons for the alleged adverse employment actions, and (3) if so, whether Ms. Gardner-Lozada

---

harassment claims, arguing that they were "separate and distinct" from the failure to promote claim. *Id.* The court denied the defendant's motion because "the same evidence which supports [the plaintiff's] discrimination claims similarly supports her harassment claims." *Id.* As a result, a reasonable investigation by the EEOC should have considered the failure to promote claim as part of a claim for harassment. Here, in contrast, the factual basis for the additional adverse employment actions was never presented to the EEOC. Ms. Gardner-Lozada's Charge of Discrimination described only a single instance of alleged discrimination or retaliation.

    In *Williams v. Univ. of the Scis. in Phila.*, No. 02-7085, 2004 WL 2399735 (E.D. Pa. Sept. 30, 2004), the court permitted the plaintiff to bring claims not presented to the administrative agency because the agency discovered evidence supporting the additional claims during its investigation and the plaintiff tried to amend his complaint before receiving his right to sue letter from the EEOC. *Id.* at *3. In this case, the record suggests neither that the EEOC discovered additional evidence of discrimination or retaliation, nor that Ms. Gardner-Lozada tried to amend her Charge of Discrimination.

has introduced sufficient evidence that SEPTA's legitimate, nondiscriminatory reasons are pretext for discrimination.

### 1. Operations Director

Ms. Gardner-Lozada has established a *prima facie* case of gender discrimination with respect to SEPTA's failure to promote her in May 2012 to the position of Operations Director. "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." *Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999). Our Court of Appeals has "repeatedly emphasized that the requirements of the prima facie case are flexible," *Pivirotto*, 191 F.3d at 357, and that "the elements of a prima facie case depend on the facts of the particular case," *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999). The Supreme Court has noted that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

SEPTA argues that Ms. Gardner-Lozada cannot satisfy the fourth prong of the *prima facie* case because (a) SEPTA decided to interview only those candidates who were NORAC qualified, (b) two of the SEPTA officials involved in that decision were female, (c) males were denied the opportunity to interview for the same reason that Ms. Gardner-Lozada was denied the opportunity to interview, and (d) Ms. Gardner-Lozada has not identified a similarly situated male employee who was treated differently. (*See* Def.'s Br. at 15-17).

Noting that many of SEPTA's arguments on this issue are more properly part of the pretext analysis than the *prima facie* case analysis, the Court holds that Ms. Gardner-Lozada has demonstrated a *prima facie* case. First, *when* SEPTA decided to interview only NORAC

qualified candidates is a matter of dispute. The officials involved in the hiring decision testified that they decided to interview only NORAC qualified candidates before posting the job description, (*see, e.g.*, Johnson Dep. at 25-26; McKenzie Dep. at 22), but Ms. Gardner-Lozada points out that the posting did not say that NORAC qualification was a prerequisite for an interview and that SEPTA's ordinary practice is to interview all candidates who satisfy the minimum requirements in the job posting. (*See* Pl.'s Dep., vol.1, at 22-25; Plaintiff's Concise Statement of Disputed Facts ("CSDF") at ¶ 5). Second, the fact that some males were similarly disadvantaged is not enough to defeat the inference created by the fact that only male applicants were NORAC qualified and therefore invited to interview for the position.  Viewing the evidence in the light most favorable to Ms. Gardner-Lozada, a reasonable jury could conclude that SEPTA decided to interview only NORAC qualified candidates in order to deny Ms. Gardner-Lozada— the only female candidate—the opportunity to interview.

Third, Mr. McGowan is a similarly situated (i.e., non-NORAC qualified) male employee who nevertheless interviewed for the Operations Director position. SEPTA contends that Mr. McGowan is not similarly situated because he appealed the decision not to interview him and was previously NORAC certified, but "[a] similarly situated employee does not need to be identically situated[—]the comparator must be similar to plaintiff 'in all relevant respects.'" *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 525 (E.D. Pa. 2014) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881-82 (3d Cir. 2011)). Here, there is enough evidence from which a reasonable jury could conclude that a non-NORAC qualified male employee received an interview despite lacking that qualification, but Ms. Gardner-Lozada—a non-NORAC qualified female employee—was denied an interview on those grounds. Finally, the fact that female officials were allegedly involved in deciding that NORAC qualification would be required to

interview for the position is not enough to rebut the inference that arises from the other inconsistencies in the hiring process.[7] Thus, noting again that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, there are enough inconsistencies to create an inference that SEPTA refused to interview Ms. Gardner-Lozada because of her gender.

Because Ms. Gardner-Lozada has established a *prima facie* case of gender discrimination, the burden shifts to SEPTA to articulate a legitimate, nondiscriminatory reason for refusing to interview her for the Operations Director position. "Where the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." *Id.* at 260. Here, SEPTA has explained that "[p]rior to posting the vacancy, SEPTA determined that only those candidates who possessed the NORAC qualification would be considered initially for the position." (Def.'s Br. at 15). Thus, SEPTA argues that Ms. Gardner-Lozada did not interview because she did not possess the NORAC qualification. This is a sufficient legitimate, nondiscriminatory reason for purposes of the *McDonnell Douglas* framework.

SEPTA's articulation of a legitimate, nondiscriminatory reason for refusing to hire Ms. Gardner-Lozada shifts the burden back to Ms. Gardner-Lozada "to show that the [City's] articulated reasons are pretextual." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992). There are two alternative ways for Ms. Gardner-Lozada to meet this burden. First, she can produce evidence that "casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication." *Doe*, 527 F.3d at 370 (citing *Fuentes*, 32 F.3d at 764). Alternatively, she can produce evidence

---

[7] Calling them "inconsistencies" may be a misnomer, as the "inconsistencies" are actually *consistent* with Ms. Gardner-Lozada's theory of gender discrimination.

that "would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Id.* To survive summary judgment, Ms. Gardner-Lozada "must present evidence contradicting the core facts put forward by the [City] as the legitimate reason for its decision." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 387 (E.D. Pa. 2013) (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)) (internal quotation marks omitted).

Ms. Gardner-Lozada has pointed to sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [SEPTA's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [SEPTA] did not act for [the asserted] non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations and quotation marks omitted). These inconsistencies include the following facts: (1) the job posting did not mention any need for NORAC qualification, (2) Ms. Gardner-Lozada was apparently marked as a "most qualified candidate" who would receive an interview before she was denied an interview, and (3) Mr. McGowan was interviewed despite not being NORAC qualified when he applied. A reasonable jury could find that SEPTA's reliance on the NORAC qualification to determine the most qualified candidates was mere pretext for discrimination, as only male candidates were interviewed and Ms. Gardner-Lozada has presented evidence contradicting the core of SEPTA's articulated reason. As a result, Ms. Gardner-Lozada's claim regarding the Operations Director position will survive SEPTA's Motion for Summary Judgment.

2.    Senior Director and PAO Director

With respect to the Senior Director and PAO Director positions, Ms. Gardner-Lozada produced sufficient evidence to establish a *prima facie* case, but just barely. The undisputed

evidence shows that for each of those positions, Ms. Gardner-Lozada was provided an opportunity to interview, was asked the same questions as other candidates, and each three-person interview panel consisted of at least one female representative, with no two panels consisting of the same individuals. Ms. Gardner-Lozada has presented no evidence to suggest otherwise. Additionally, candidates were apparently evaluated according to the same selection criteria and Ms. Gardner-Lozada has presented insufficient evidence to the contrary. Nevertheless, under the circumstances, the fact that SEPTA promoted male employees instead of her is enough to create a *prima facie* case of discrimination.[8] *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944-45 (8th Cir. 1994) ("[P]roof of replacement by a person outside the protected class will satisfy the fourth element . . . .").

Because Ms. Gardner-Lozada has established a *prima facie* case of gender discrimination, the burden shifts to SEPTA to articulate a legitimate, nondiscriminatory reason for refusing to interview her for the Senior Director and PAO Director positions. Here, SEPTA explained that Ms. Gardner-Lozada "was not the top-ranked candidate for the jobs to which she applied, and consequently was not selected for any of these positions." (Def.'s Mem. at 19). In support of its articulated reason, SEPTA detailed its efforts to ensure a fair hiring process, including three-person interview panels, pre-planned questions, and numerical scoring systems. This is a sufficient legitimate, nondiscriminatory reason for purposes of the *McDonnell Douglas* framework.

SEPTA's articulation of a legitimate, nondiscriminatory reason for not hiring Ms. Gardner-Lozada shifts the burden back to Ms. Gardner-Lozada to prove pretext. Ms. Gardner-

---

[8] Ms. Gardner-Lozada argues that SEPTA's admission that she met the minimum qualifications for all three positions is enough to establish a *prima facie* case of gender discrimination, but that argument would render superfluous the fourth element of a discrimination claim.

Lozada claims that she has presented sufficient evidence for a reasonable jury to find that "the interview for [the Senior Director] position was a sham to cover-up the desire of Mr. Foley to promote Mr. Lauser to this position." (Pl.'s Br. at 14). In particular, she argues that Mr. Lauser was unilaterally promoted to a Senior Director position in January 2012 in violation of SEPTA's promotional policies, and that Mr. Lauser retained a "competitive edge" for the Senior Director position afterward. (Pl.'s Dep., vol. 1, at 130-131). Ms. Gardner-Lozada does not explain why Mr. Lauser's "competitive edge" reflected SEPTA's preference to hire males instead of females. The EEOC has explained, "[a]n isolated instance of favoritism toward a 'paramour' (or a spouse, *or a friend*) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders." EEOC Policy Statement No. N-915-048, § A (emphasis added). Favoring a particular individual does not necessarily establish gender discrimination, as it "disadvantages both sexes alike for reasons other than gender . . . ." *Rosa v. Seiko Corp. of Am.*, No. 05-4406, 2008 WL 229118 (D.N.J. Jan. 25, 2008). Therefore, Ms. Gardner-Lozada's allegations of favoritism do not make it more likely than not that she was denied the Senior Director position because of her gender.

Ms. Gardner-Lozada may try to prove pretext by presenting sufficient evidence for a reasonably jury to doubt SEPTA's legitimate, nondiscriminatory reason for not hiring her to the Senior Director position, but she has not produced enough evidence to call into question SEPTA's articulated reason. SEPTA has detailed the process used to fill the Senior Director position, and Ms. Gardner-Lozada's strongest critique is that Mr. Lauser had a "competitive edge" due to his relationship with his superiors. This allegation is not enough to call into doubt the propriety of the procedures used to reach this hiring decision. Although Ms. Gardner-Lozada claims that she was more qualified than Mr. Lauser for the position, this bald assertion without a

citation to evidence in the record is not enough for a reasonable jury to doubt SEPTA's articulated reason for hiring Mr. Lauser.

As for the PAO Director position, Ms. Gardner-Lozada claims that Mr. Cantwell had an advantage in the selection process because Mr. Lauser prepared questions focusing on Mr. Cantwell's past experience. Again, it is not clear why seeking to give a *particular* male employee an advantage reflects gender discrimination, especially when all the other male applicants who lacked Mr. Cantwell's experience were similarly disadvantaged in the application process. Consequently, Ms. Gardner-Lozada has not shown that discrimination is more likely than not the reason Mr. Cantwell was hired. Ms. Gardner-Lozada can try to prove pretext by presenting sufficient evidence to call SEPTA's articulated reason into question, but she has not done so. Ms. Gardner-Lozada points to no evidence in the record to show that she was more qualified for the position than Mr. Cantwell and the alleged unfairness in the hiring process is not sufficient to show that SEPTA's articulated reason for denying Ms. Gardner-Lozada the opportunity to interview is not worth believing.

    C.    RETALIATION

        1.    *Prima Facie* Case

To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the adverse employment action. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). For purposes of summary judgment, SEPTA has admitted that Ms. Gardner-Lozada engaged in protected activity when she filed a Charge of Discrimination with the EEOC in 2008 and a civil suit against SEPTA in 2009, and that she suffered adverse employment

actions when she was not promoted after filing her formal complaint with the EEOC. Thus, whether Ms. Gardner-Lozada has established a *prima facie* case of retaliation will turn on causation.

Title VII retaliation claims must be proved according to traditional principles of but-for causation. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). The plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534. To prove causation, courts in the Third Circuit have held that a plaintiff may rely on timing, ongoing antagonism, or "other types of circumstantial evidence that support the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). Temporal proximity must be "unusually suggestive" of retaliatory animus in order to permit a claim to survive summary judgment on those grounds. *Krouse*, 126 F.3d 494, 503 (3d Cir. 1997).

Here, Ms. Gardner-Lozada claims to have presented "undisputed evidence that following her protected activities she was ostracized by management and subjected to additional responsibilities and duties without compensation." (Pl.'s Br. at 19). Ms. Gardner-Lozada failed to provide any record citation to support that assertion, but she is probably referring to her deposition testimony that she was given additional work without additional compensation[9] and that her coworkers gave her the silent treatment. (*See* Pl.'s Dep., vol. 1, at 87). Ms. Gardner-Lozada's testimony that her coworkers knew of her prior lawsuit and ostracized her after it settled is sufficient to link her protected activity with the alleged adverse employment actions.

---

[9] SEPTA points out that Ms. Gardner-Lozada received a merit-based salary increase every year beginning in 2008. (*See* Def.'s Br. at 23). Ms. Gardner-Lozada admits that she received merit increases every year, but claims that she was entitled to more than the merit increases she received. (*See* Response to SUMF ¶¶ 112-13). That, on its own, hardly seems like the kind of "pattern of antagonism" that can give rise to an inference of retaliatory animus.

*See Woodson*, 109 F.3d 920-21 (noting that a "pattern of antagonism in the intervening period" between protected activity and an adverse employment action can be sufficient proof of causation). At the very least, whether Ms. Gardner-Lozada's coworkers knew of her prior lawsuit and ostracized her because of it is a disputed issue of material fact sufficient to establish a *prima facie* case at this stage of the litigation.

> 2.  Legitimate, Non-Retaliatory Reason

Because Ms. Gardner-Lozada has established a *prima facie* case of retaliation, the burden shifts to SEPTA to articulate a legitimate, non-retaliatory reason for refusing to interview her for the Senior Director and Director of PAO positions. As discussed above, SEPTA has satisfied its burden. With respect to the Operations Director position, SEPTA explains that "[p]rior to posting the vacancy, SEPTA determined that only those candidates who possessed the NORAC qualification would be considered initially for the position." (Def.'s Br. at 15). Because Ms. Gardner-Lozada was not NORAC certified, argues SEPTA, she was not selected to interview. With respect to the Senior Director and PAO Director positions, SEPTA explains that it used a fair and objective hiring process to evaluate the candidates. According to SEPTA, Ms. Gardner-Lozada "was not the top-ranked candidate for the jobs to which she applied, and consequently was not selected for any of these positions." (Def.'s Mem. at 19). These are sufficient legitimate, non-retaliatory reasons for purposes of the *McDonnell Douglas* framework.

> 3.  Pretext Analysis

As discussed above, Ms. Gardner-Lozada has presented sufficient evidence from which a reasonable jury could conclude that SEPTA's legitimate, non-retaliatory reason for denying her the opportunity to interview for the Operations Director position was pretext for retaliation. *See supra* Part III.B.1. Ms. Gardner-Lozada has pointed to sufficient "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in [SEPTA's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [SEPTA] did not act for [the asserted] non-[retaliatory] reasons." *Fuentes*, 32 F.3d at 765 (internal citations and quotation marks omitted). "[B]ecause a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000), a reasonable jury could find that SEPTA did not actually rely on the NORAC qualification and its explanation was actually pretext for retaliation. As a result, Ms. Gardner-Lozada's retaliation claim regarding the Operations Director position will survive SEPTA's motion for summary judgment.

However, Ms. Gardner-Lozada has failed to demonstrate that SEPTA's legitimate, non-retaliatory reasons for refusing to promote her to the Senior Director or PAO Director positions were pretext for retaliation. Ms. Gardner-Lozada's pretext argument with respect to her retaliation claims relies on the same facts as her pretext argument with respect to her discrimination claims. In particular, Ms. Gardner-Lozada argues that SEPTA hired Mr. Lauser and Mr. Cantwell for nepotistic reasons and, consequently, the hiring process was unfair. For the same reasons that the Court found those arguments insufficient to prove pretext as to the discrimination claims, *see supra* Part III.B.2, they are insufficient to prove pretext as to the retaliation claims. Ms. Gardner-Lozada's suggestions of favoritism in the hiring process for the Senior Director and PAO Director positions do not cast sufficient doubt on SEPTA's articulated reasons for her claims to survive summary judgment.

**IV.**    **CONCLUSION**

For the reasons discussed above, the Court will grant SEPTA's Motion for Summary Judgment as it relates to the Senior Director and PAO Director positions, but deny SEPTA's Motion for Summary Judgment as it relates to the Operations Director position.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

23