**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBRA V. GARDNER-LOZADA,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **SEPTA,** | : | |
| *Defendant*. | : | **No. 13-2755** |
| | : | |

PRATTER, J.                                    FEBRUARY 26, 2015

**MEMORANDUM**

Debra Gardner-Lozada claims that SEPTA engaged in gender discrimination (Counts I and III) and retaliation (Counts II and IV) under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, when it failed to promote her to the position of Director of Railroad Service – Operations Division ("Operations Director") in May 2012.[1] SEPTA filed two motions *in limine* (Docket Nos. 28, 41) to preclude the introduction of certain types of evidence at trial. For the reasons that follow, the Court grants in part and denies in part SEPTA's motions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.   MS. GARDNER-LOZADA'S PRIOR LAWSUIT

In October 1999, SEPTA awarded Ms. Gardner-Lozada a Management Analyst (grade 40) position in its Railroad Division. In 2007, Ms. Gardner-Lozada believed she was assigned additional duties without additional compensation, and formally requested that her position be

---

[1] The Amended Complaint (Docket No. 11) also alleges that SEPTA, for discriminatory and/or retaliatory reasons, refused to hire Ms. Gardner-Lozada for two other positions: Senior Director of Railroad Services – Operations in January 2013 and Director of Railroad Services – Personnel Assignment Office in July 2013. The Court granted summary judgment in favor of SEPTA on those claims. *See* November 21, 2014 Mem. & Order (Docket Nos. 36, 37).

[2] The facts are undisputed unless expressly noted.

reclassified as grade 42. SEPTA changed her title to Assistant Director, Railroad Service for Railroad Revenue Operations, but the position remained at grade 40.

In September 2008, Ms. Gardner-Lozada filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that SEPTA refused to raise her position to grade 42 because of her gender. Ms. Gardner-Lozada filed a federal gender discrimination lawsuit against SEPTA in July 2009. In July 2010, Ms. Gardner-Lozada accepted SEPTA's offer of judgment in the amount of $90,000.

B.   SEPTA'S HIRING PROCESS

Ordinarily, when a vacancy opens at SEPTA, the Manager looking to hire informs SEPTA's Recruitment Department of the vacancy. SEPTA's Recruitment Department then prepares a "Requisition for Personnel Form," and submits it through an established approval process. As part of the approval process, the Equal Employment Opportunity/Affirmative Action ("EEO/AA") and Employee Relations Department identifies any affirmative action goals for the vacant position. After the Request for Personnel Form is approved, a Recruiter prepares a posting to advertise the vacant position.

The parties disagree about two key aspects of SEPTA's hiring process. First, SEPTA claims that before the job opening is posted, the Recruiter meets with the Hiring Manager and an EEO/AA representative to *review* the job description. However, Ms. Gardner-Lozada claims that the meeting is to *finalize* the job description to be posted, not merely to discuss the position. Second, SEPTA claims that it generally chooses to interview only the most qualified applicants, but Ms. Gardner-Lozada claims that all applicants meeting the minimum qualifications are normally selected for interviews.

At the interview, the same interview panel asks each of the applicants the same set of questions and ranks the applicants' responses based on established selection criteria. The rankings are then inserted into a document called the Consensus Panel Ranking Chart, and the highest-ranked candidate is selected for the position.

C.    OPERATIONS DIRECTOR

In February 2012, James Johnson, Senior Director of Railroad Service Operations, initiated the hiring process to fill the vacant Operations Director position. The previous Operations Director had been certified by the Northeast Operating Rules Advisory Committee ("NORAC"), but NORAC qualification was not a specified requirement listed expressly on the job posting.[3]

SEPTA claims that the Recruiter (Odessa Finney, an African-American female), the Director of EEO/AA and Employee Relations (Lorraine McKenzie, an African-American female), and Mr. Johnson discussed the issue of NORAC qualification for Operations Director at the pre-posting meeting. According to SEPTA, they decided that the NORAC qualification would be used to determine which applicants were most qualified, and only the most qualified applicants would be invited to interview for the position. Ms. Gardner-Lozada disputes SEPTA's description of the pre-posting meeting, arguing instead that any additional qualifications required during the pre-posting meeting would have been added to the actual job posting.

In the week from March 8, 2012 to March 15, 2012, SEPTA posted an internal vacancy for the Operations Director position. Ms. Gardner-Lozada applied for the position on March 13, 2012. She was the only female applicant for the position. On April 6, 2012, Ms. Finney, Mr. Johnson, and Affirmative Action Officer Carole O'Neal (an African-American female) reviewed the applications. They offered six NORAC-qualified male candidates the opportunity to

---

[3] NORAC promulgates a set of Operating Rules that govern the operation of railroads.

3

interview for the Director of Operations position; they did not invite Ms. Gardner-Lozada to interview. On the Prospective Employee Processing Form, a document used to determine which applicants will advance to the interview stage, Ms. Finney initially noted that Ms. Gardner-Lozada was one of the most qualified candidates and would be granted an interview. However, that marking was ultimately crossed off and Ms. Gardner-Lozada was not invited to interview for the position.

Robert McGowan, a male SEPTA employee who applied for the Operations Director position, learned in late April that he was not invited to interview because he lacked the NORAC qualification. On April 30, 2012, Mr. McGowan submitted a memorandum to SEPTA's Human Resources requesting to interview because although he was not then NORAC certified, he had significant railroad experience and would be willing to become NORAC certified if hired. SEPTA also claims that Mr. McGowan was once NORAC certified. SEPTA ultimately decided to interview Mr. McGowan for the Operations Director position, even though he was not NORAC certified at the time he applied. Ms. Gardner-Lozada disputes that Mr. McGowan was ever NORAC certified.

Mr. Johnson, Director of Operations Kim Kennedy (female), and Bernard Koch (male) ultimately conducted the interviews and awarded the position to Richard Mahon. Mr. Mahon was NORAC certified at the time of his interview and selection. Ms. Gardner-Lozada learned that she was not selected to interview for the position in late May 2012.

D.   PROCEDURAL HISTORY

On June 14, 2012, Ms. Gardner-Lozada filed a Charge of Discrimination with the EEOC and cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). The EEOC confirmed receipt of the Charge by letter dated October 4, 2012. On February 18, 2013, Ms.

Gardner-Lozada requested a "Right to Sue" letter. Ms. Gardner-Lozada filed her Complaint on May 20, 2013 and filed the Amended Complaint on October 9, 2013.

After the Court granted partial summary judgment for SEPTA, SEPTA filed two Motions *in Limine*. In the First Motion *In Limine* (Docket No. 28), SEPTA asks the Court to exclude four types of evidence: (1) evidence and testimony regarding the circumstances underlying Ms. Gardner-Lozada's 2008 EEOC Charge and 2009 civil complaint against SEPTA; (2) evidence and testimony regarding SEPTA employee Thomas Bateman, whom Ms. Gardner-Lozada alleges to be a similarly situated co-worker who received favorable treatment because of his gender; (3) evidence relating to various male SEPTA employees listed in paragraph 31 of the Amended Complaint; and (4) evidence and testimony regarding Ms. Gardner-Lozada's failure to be promoted to Director of Transportation—Bus Operations in December 2011. In the Second Motion *In Limine* (Docket No. 41), SEPTA asks the Court to exclude evidence and testimony regarding the circumstances under which Ms. Gardner-Lozada became NORAC certified after she was not selected to interview. Ms. Gardner-Lozada has indicated that she has "no intent of introducing evidence relating to [the Bus Operations] position at trial and therefore does not oppose SEPTA's motion to preclude any evidence relating to this position from being introduce[d] at trial." Pl.'s Br. (Docket No. 33) at 1. However, she opposes the remaining aspects of the Motions.

## II.   LEGAL STANDARD

"Under the Federal Rules of Evidence, subject to certain limitations, all evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence." *Forrest v. Beloit Corp.*, 424 F.3d 344, 355 (3d Cir. 2005); *see* Fed. R. Evid. 401, 402. Pursuant to Federal Rule of Evidence

403, a court may nonetheless exclude relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Forrest*, 424 F.3d at 355 (quoting Fed R. Evid. 403). To exclude evidence under Rule 403, "the probative value of the evidence must be 'substantially outweighed' by the problems in admitting it." *Id.* (quoting *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343-44 (3d Cir. 2002)). However, "prejudice does not simply mean damage to the opponent's cause." *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (internal quotation marks omitted). Only "*unfair* prejudice," or "prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found," can tip the scales in favor of inadmissibility. *Ansell v. Green Acres Contr. Co.*, 347 F.3d 515, 525 (3d Cir. 2003) (emphasis added).

### III.   DISCUSSION

A.   EVIDENCE AND TESTIMONY REGARDING THE CIRCUMSTANCES UNDERLYING MS. GARDNER-LOZADA'S 2008 EEOC CHARGE AND 2009 CIVIL COMPLAINT

Pursuant to Federal Rules of Evidence 401, 402, and 403, SEPTA seeks to exclude evidence of the circumstances underlying Ms. Gardner-Lozada's 2008 EEOC Charge and 2009 civil complaint against SEPTA. Ms. Gardner-Lozada alleges that SEPTA refused to hire her as Operations Director in retaliation for bringing discrimination claims against SEPTA in 2008 and 2009. It is undisputed that Ms. Gardner-Lozada filed a Charge of Discrimination against SEPTA with the EEOC in 2008 and a civil complaint against SEPTA in 2009, alleging gender discrimination in both. It is similarly undisputed that Ms. Gardner-Lozada accepted SEPTA's

offer of judgment in the amount of $90,000. SEPTA will stipulate to those facts, and to the fact that Ms. Gardner-Lozada had a good faith basis for filing the Charge and the Complaint.

Evidence and testimony of Ms. Gardner-Lozada's prior complaint is relevant because it helps to establish that she engaged in protected activity, and protected activity is an element of retaliation claims. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). Nevertheless, SEPTA argues that an unfair risk of prejudice substantially outweighs the probative value of such evidence. The Court disagrees. Plaintiff may prove her case by calling upon appropriate evidence, and the danger of unfair prejudice is not so severe that evidence of the protected activity should be excluded. *See United States v. Eufrasio*, 935 F.2d 553, 572 (3d Cir. 1991) ("Rule 403 does not as a rule prohibit the government from presenting its strongest possible case against criminal defendants."). SEPTA's reliance on *Chislum v. Dep't of Corrections*, No. 01-4901, 2005 WL 1827950 (D.N.J. Aug. 2, 2005), is misplaced. Whereas the *Chislum* court excluded evidence related to dismissed allegations "for the purpose of proving those allegations," *id.* at *2, here Ms. Gardner-Lozada seeks to prove an essential element of her retaliation claim by introducing evidence of the underlying activity that allegedly prompted the retaliation. SEPTA's offer to stipulate to the protected activity "does not automatically mean the fact may not be proved instead, as long as the probative value of the proof still exceeds the prejudicial effect, taking into account the offer to stipulate." *United States v. Provenzano*, 620 F.2d 985, 1003-04 (3d Cir. 1980).

Although the Court will permit evidence and testimony regarding the facts underlying Ms. Gardner-Lozada's protected activity, the Court remains mindful that the ultimate issue in this case is SEPTA's reason for denying her the opportunity to interview for the Operations Director position in 2012. As a result, the Court remains mindful of the need to protect against

jury confusion and to avoid a "trial within a trial" on the claim that was the basis of Ms. Gardner-Lozada's protected activity.

      B.    <u>EVIDENCE AND TESTIMONY REGARDING COMPARATORS</u>

      SEPTA next seeks to exclude evidence and testimony regarding certain SEPTA employees whom Ms. Gardner-Lozada alleges are proper comparators that she may use to prove her case. Plaintiffs in discrimination and retaliation lawsuits may demonstrate circumstances that give rise to an inference discrimination or retaliation, and thereby prove that the employer's legitimate, nondiscriminatory reason for the adverse employment action at issue in the litigation is mere pretext, by showing "that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998). "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (internal quotation marks omitted). "Which factors are relevant is determined by the context of each case." *Id.* "In a failure to transfer or promote case, the relevant factors may include [a showing that the two employees dealt with the same supervisor, were subject to the same standards, had engaged in similar conduct,] possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009). "Whether comparators are similarly situated is generally a question of fact for the jury." *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014). However, the Court may find that a proposed comparator is not similarly situated as a matter of law when there is "no evidence from which a jury could conclude the parties were similarly situated." *Id.*

1.      Evidence and Testimony Regarding SEPTA Employee Thomas Bateman

Ms. Gardner-Lozada alleges that SEPTA hired Thomas Bateman as Transportation Manager in the Railroad Division when he was not fully NORAC certified, even though the Transportation Manager was required to be NORAC certified. According to Ms. Gardner-Lozada, SEPTA gave Mr. Bateman a 6-month grace period after being hired during which he was to become fully NORAC certified.  SEPTA argues that evidence relating to Mr. Bateman's hiring is irrelevant and fails the balancing test prescribed by Rule 403 because Mr. Bateman is not "similarly situated" to Ms. Gardner-Lozada.

The Court finds that no reasonable juror could conclude that Mr. Bateman was "similarly situated" to Ms. Gardner-Lozada because Mr. Bateman (a) applied for a position that was materially different from the position for which Ms. Gardner-Lozada applied, (b) possessed qualifications that were materially different from the qualifications that Ms. Gardner-Lozada possessed, and (c) was hired to his new position under circumstances that were materially different from those under which Ms. Gardner-Lozada was denied the opportunity to interview for the Operations Director position. First, Transportation Manager was a grade 38 position, while Operations Director was a grade 42 position. This is a major difference in grade level that materially distinguishes the positions and SEPTA's evaluation of potential candidates. Also, there is no evidence to suggest that the material duties of those two positions were similar. Second, Mr. Bateman was already a grade 38 employee and was partially NORAC certified, whereas Ms. Gardner-Lozada was seeking a promotion to grade 42 and was not even partially NORAC certified. Thus, Mr. Bateman was materially more qualified to make a lateral move and become Transportation Manager than Ms. Gardner-Lozada was to be promoted and become Operations Director. Third, Mr. Bateman was only hired after two other candidates declined the

position, whereas Ms. Gardner-Lozada was denied the opportunity to interview when supposedly more qualified candidates wanted the position she sought. In addition, different groups of SEPTA officials made the decision to hire Mr. Bateman and to deny Ms. Gardner-Lozada the opportunity to interview.

The Court finds that the introduction of evidence related to Mr. Bateman's hiring would be irrelevant because, as a matter of law, Mr. Bateman is not "similarly situated" to Ms. Gardner-Lozada. The Court also finds that even if such evidence were relevant, its introduction at trial would create a serious risk of confusing and distracting the jury, so the risk of unfair prejudice substantially outweighs its probative value. This is not fatal to Ms. Gardner-Lozada's claim because, as the Court explained in its November 21, 2014 Memorandum (Docket No. 37), she may point to Mr. McGowan as a "similarly situated" employee and use evidence of his interview to prove pretext.

        2.        Evidence Relating to the Male SEPTA Employees Listed in Paragraph 31 of the Amended Complaint

Ms. Gardner-Lozada argues that evidence relating to the 14 male employees listed in paragraph 31 of the Amended Complaint should be admitted as statistical evidence of SEPTA's practice of promoting and compensating male employees more favorably than female employees. The Court finds that Ms. Gardner-Lozada has not met her burden of proving that each of those employees is similarly situated to Ms. Gardner-Lozada. The Court knows of no evidence describing these individuals' positions, hirings, qualifications, application processes, or interview processes. In addition, Ms. Gardner-Lozada cites no cases in support of her argument. Without more, the Court cannot conclude that the list of individuals would do anything more than distract the jury from the ultimate question in this case, namely, whether Ms. Gardner-Lozada was

denied the opportunity to interview for the Operations Director position for discriminatory and/or retaliatory reasons. As a result, the Court will exclude the purported statistical evidence described in paragraph 31 of the Amended Complaint.

C.     EVIDENCE AND TESTIMONY REGARDING THE CIRCUMSTANCES OF MS. GARDNER-LOZADA'S NORAC QUALIFICATION

Finally, SEPTA moves to exclude evidence and testimony regarding the circumstances under which Ms. Gardner-Lozada became NORAC certified. From September 2012 to November 2012, Ms. Gardner-Lozada successfully completed classes to become NORAC certified. Ms. Gardner-Lozada alleges that SEPTA discriminated and/or retaliated against her by prohibiting her from taking NORAC classes during work hours, when SEPTA allegedly permitted male employees—Mr. Bateman, in particular—to take NORAC classes during working hours.

The Court will permit Ms. Gardner-Lozada to introduce evidence of the fact that she ultimately became NORAC certified, but will exclude evidence and testimony that she was required to complete the necessary classes on her own time. To prove discrimination, Ms. Gardner-Lozada must prove that she was qualified for the position she was seeking. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). If the jury concludes that SEPTA interviewed Mr. McGowan because he could become NORAC certified, then Ms. Gardner-Lozada must have the opportunity to prove likewise that she was capable of becoming NORAC certified. Evidence that Ms. Gardner-Lozada actually became NORAC certified is convincing evidence that she was capable of becoming NORAC certified, so it will be admitted for that purpose. However, evidence and testimony that Ms. Gardner-Lozada was required to take NORAC classes on her own time is only relevant if a similarly situated SEPTA employee was

permitted to take the classes during working hours. Because Ms. Gardner-Lozada points only to

Mr. Bateman as a relevant comparator, and Mr. Bateman was not "similarly situated" to Ms.

Gardner-Lozada, the Court will exclude the evidence and testimony. Ms. Gardner-Lozada may

discuss the circumstances under which she became NORAC certified to show that she was

qualified to interview for the Operations Director position, but she may not discuss them to draw

a comparison to contrast SEPTA's treatment of her with its treatment of Mr. Bateman to argue

that SEPTA discriminated or retaliated against her.

## IV.   CONCLUSION

For the reasons explained above, the Court will grant in part and deny in part SEPTA's

First Motion *In Limine* (Docket No. 28) and Second Motion *In Limine* (Docket No. 41). The

Court will permit the introduction of evidence regarding the circumstances underlying Ms.

Gardner-Lozada's 2008 EEOC Charge and 2009 civil complaint, as well as certain evidence

regarding the circumstances under which Ms. Gardner-Lozada became NORAC certified.

However, the Court will exclude evidence and testimony regarding Ms. Gardner-Lozada's

failure to be promoted to Director of Transportation – Bus Operations in December 2011, Mr.

Bateman's transfer to the position of Transportation Manager, the male SEPTA employees listed

in paragraph 31 of the Amended Complaint, and SEPTA's allegedly inconsistent treatment of

Ms. Gardner-Lozada by requiring her to complete NORAC classes on her own time.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE