IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA V. GARDNER-LOZADA,** | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **SEPTA,** | : | |
| *Defendant*. | : | No. 13-2755 |
| | : | |

PRATTER, J.                                                                                                                        JULY 24, 2015

## MEMORANDUM

Debra Gardner-Lozada claims that SEPTA engaged in gender discrimination (Counts I and III) and retaliation (Counts II and IV) under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA), 43 Pa. Cons. Stat. § 951 *et seq.*, when it failed to promote her to the position of Director of Railroad Service – Operations Division ("Operations Director") in May 2012.[1] Following a trial, a jury found in favor of SEPTA with respect to the retaliation claim, but found in favor of Ms. Gardner-Lozada with respect to the gender discrimination claim. The jury awarded Ms. Gardner-Lozada one dollar ($1.00) in damages.

SEPTA now moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59. For the reasons that follow, the Court will grant judgment as a matter of law in favor of SEPTA.

---

[1] The Amended Complaint (Docket No. 11) also alleges that SEPTA, for discriminatory and/or retaliatory reasons, refused to hire Ms. Gardner-Lozada for two other positions: Senior Director of Railroad Services – Operations in January 2013 and Director of Railroad Services – Personnel Assignment Office in July 2013. The Court granted summary judgment in favor of SEPTA on those claims. *See* November 21, 2014 Mem. & Order (Docket Nos. 36, 37).

1

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

   A.      MS. GARDNER-LOZADA'S EMPLOYMENT AT SEPTA

SEPTA hired Ms. Gardner-Lozada as a Financial Analyst in December 1998. (Trial Tr. vol. 1, 26:24-27:23, Mar. 16, 2015). In 1999, Ms. Gardner-Lozada was promoted to a Management Analyst (grade 40) position in SEPTA's Railroad Division. (Trial Tr. vol. 1 at 28:2-9). In 2007, SEPTA changed Ms. Gardner-Lozada's title to Assistant Director of Railroad Transportation for Railroad Revenue Operations (grade 40). (Trial Tr. vol. 1 at 33:4-6). In that position, Ms. Gardner-Lozada's responsibilities included supervising the collection of revenue for the Railroad Division. (Trial Tr. vol. 1 at 95:9-11). Due to the nature of Ms. Gardner-Lozada's position, she had no responsibility for the safety and movement of trains and passengers, and her knowledge of train operations was limited. (Trial Tr. vol. 1 at 99:12-17, 102:14-103:23).

   B.      THE OPERATIONS DIRECTOR POSITION

In February 2012, James Johnson, a Senior Director of Railroad Service Operations at SEPTA, completed a Requisition for Personnel Form to initiate the process of filling the soon-to-be vacant Operations Director position. (Trial Tr. vol. 2, 107:6-19, 112:18-21, Mar. 17, 2015). The Requisition for Personnel Form indicated that the Operations Director position had an Equal Employment Opportunity/Affirmative Action ("EEO/AA") goal for minority and female candidates. (Trial Tr. vol. 2 at 108:21-109:3).[2]

On March 7, 2012, SEPTA Recruiter Odessa Finney (an African-American female), SEPTA Director of EEO/AA and Employee Relations Lorraine McKenzie (an African-American

---

[2] When a position has an EEO/AA goal, an EEO/AA representative attends the pre-posting meeting to ensure that the process runs smoothly and to determine whether any outreach efforts are required. (*See* Trial Tr. vol. 3, 56:22-57, 59:5-20, Mar. 18, 2015). There is no guarantee, requirement, or preference that SEPTA actually award positions with EEO/AA goals to minority or female candidates. (Trial Tr. vol. 3 at 57:16-20, 58:7-13).

female), and Mr. Johnson held a pre-posting meeting to discuss the Operations Director position, review the job description, and finalize the job posting. (Trial Tr. vol. 2 at 151:18-20, 152:7-13, 153:25-154:4). At trial, they testified that at the pre-posting meeting, they discussed Mr. Johnson's preference that the selected candidate be qualified on the Northeast Operating Rules Advisory Committee ("NORAC") Book of Rules. (Trial Tr. vol. 2 at 156:2-17; Trial Tr. vol. 3, 62:10-63:3, 66:20-67:1, 83:10-83:4, 116:12-17, Mar. 18, 2015). NORAC promulgates a set of operating rules that govern the operation of railroads in North America. The rules are intended to enhance railroad safety and cover all aspects of railroad operations that affect railroad safety. (Trial Tr. vol. 1 at 123:17-124:5). Glen Grosmick, the previous Operations Director who had recently announced his intention to retire, had been NORAC qualified, and Mr. Johnson testified that he believed the Operations Director should be NORAC qualified to perform the critical functions of the position, including responding to railroad accidents and communicating with command centers during emergencies. (Trial Tr. vol. 3 at 80:1-23, 82:3-19, 82:23-83:4, 83:5-85:24). Mr. Johnson himself was not NORAC qualified, and only three of the six male SEPTA employees holding Director-level positions were NORAC qualified, but Mr. Johnson testified that he preferred to work with individuals who were NORAC qualified. (Trial Tr. vol. 3 at 86:16-87:2).

Ultimately, the job posting for Operation's Director did not expressly require that applicants be NORAC qualified. (Def.'s Trial Ex. 16). However, Mr. Johnson, Ms. Finney, and Ms. McKenzie testified that at the pre-posting meeting, they decided to designate as "most qualified" those candidates who met the minimum requirements in the job posting and were NORAC qualified, and that they decided to invite only the "most qualified" candidates to participate in the first round of interviews for the Operations Director position. (Trial Tr. vol. 2 at

158:25-159:25, 165:2-12; Def.'s Trial Ex. 10). In other words, those applicants for the Operations Director opening who met the minimum qualifications in the job posting and had obtained the NORAC qualification would be placed in Group A and advance to the interview stage, but those applicants who met the minimum qualifications but *lacked* the NORAC qualification would be placed in Group B and would be interviewed only if the interview panel did not hire an applicant from Group A. At no point before or during the pre-posting meeting were Mr. Johnson, Ms. Finney, and Ms. McKenzie aware that Ms. Gardner-Lozada might be interested in the Operations Director position. (*See, e.g.*, Trial Tr. vol. 2 at 165:2-166:8).

At trial, Ms. Gardner-Lozada offered testimony about SEPTA's hiring policies that conflicted with the testimony of Mr. Johnson, Ms. Finney, and Ms. McKenzie. Although SEPTA's Hiring Policy permits the designation of "most qualified" candidates for purposes of determining which applicants would be interviewed first, (Trial Tr. vol. 2 at 165:2-12), Ms. Gardner-Lozada also testified that in her experience, any applicant who met the minimum qualifications in a job posting would automatically be invited to interview for the position. (Trial Tr. vol. 1 at 127:10-20).

SEPTA posted an internal vacancy for the Operations Director position from March 8, 2012 to March 15, 2012. (Trial Tr. vol. 2 at 166:14-21; 153:10-15). Ms. Gardner-Lozada applied for the position on March 13, 2012. (Def.'s Trial Ex. 17). Of the 15 SEPTA employees who applied for the position, Ms. Gardner-Lozada was the only female. (Pl.'s Ex. 7; Trial Tr. vol. 2 at 119:8-12, 180:15-188:7). On April 6, 2012, Ms. Finney, Mr. Johnson, and Affirmative Action Officer Carole O'Neal (an African-American female) reviewed the 15 applications. (Trial Tr. vol. 2 at 178:15-180:8). They invited six NORAC-qualified male candidates to interview for the Operations Director position; they did not invite Ms. Gardner-Lozada to interview. (Trial Tr. vol.

2 at 119:8-12, 180:15-188:7). On the Prospective Employee Processing Form, a document used in the process of determining which applicants will advance to the interview stage, Ms. Finney initially noted that Ms. Gardner-Lozada was one of the most qualified candidates and would be granted an interview. (Def.'s Trial Ex. 17). However, that initial notation was ultimately crossed off, and Ms. Gardner-Lozada was not invited to interview for the position. *Id.*

Luis Rodriguez and Matthew Hogan, two of the male SEPTA employees invited to interview for the Operations Director position, arguably lacked the minimum qualifications[3] in the job posting. For example, the job posting required "eight (8) years experience in a transportation related field which includes a minimum of five (5) years experience in a managerial capacity." (Def.'s Trial Ex. 16). Mr. Rodriguez's resume showed less than five years of experience in a managerial capacity *in a transportation related field*. (*See* Def.'s Trial Ex. 22). Indeed, Mr. Rodriguez initially was deemed to lack the necessary qualifications for the Operations Director position, as evidenced by the note on his Prospective Employee Processing Form stating that he lacked five years of managerial experience. *Id.* In the end, that note was crossed out, and Mr. Rodriguez was interviewed as one of the most qualified candidates. In regard to that point, SEPTA employees testified that they believed Mr. Rodriguez possessed the minimum managerial experience required by the job posting because his resume said he was once the owner/operator of a Philly Soft Pretzel Factory, (Trial Tr. vol. 2 at 122:18-22), but the job posting appears to have required experience in a managerial capacity *specifically in a*

---

[3] Ms. Gardner-Lozada also claims that Michael Dobson, another male SEPTA employee who was invited to interview, lacked the minimum qualifications described in the job posting because his resume did not show that he had 2 years' experience in customer service. However, Mr. Dobson's resume states that he twice received the SEPTA Customer Service Commendation, which demonstrates that he had at least two years of customer service experience at SEPTA. (Trial Tr. vol. 1 at 155:11-14). In light of that evidence, a reasonable jury could not have found that Mr. Dobson lacked the minimum qualifications in the job posting.

5

*transportation related field*.[4] In addition, the job posting required "[a] minimum of two (2) years experience in a Customer Service environment, with direct responsibility for interfacing with customers required." (Def.'s Trial Ex. 16). Mr. Hogan's resume appears to show that he lacked two years of experience in a position that required "face to face" interactions with customers. (*See* Def.'s Trial Ex. 18). SEPTA argues that the "interfacing with customers" requirement did *not* require "face to face" interactions, but, as Ms. Gardner-Lozada no doubt would hasten to argue, a reasonable jury could have found that it did and that Mr. Hogan's resume did not state that he had such experience.

On April 30, 2012, Robert McGowan, a male SEPTA employee who applied for the Operations Director position and who independently learned that he would not be invited to interview because he lacked the NORAC qualification, appealed the decision not to interview him by submitting a memorandum to Susan Van Buren, SEPTA's Assistant General Manager of Human Resources. (Trial Tr. vol. 2 at 91:8-92:4). In the memorandum, Mr. McGowan explained that although he was not then NORAC qualified, he had significant railroad experience and would be willing to become NORAC qualified if hired for the Operations Director position. (Def.'s Trial Ex. 33). Daniel Amspacher, SEPTA's Director of Recruitment, investigated Mr. McGowan's appeal by reviewing Mr. McGowan's work history and the responsibilities associated with his prior positions, among other things. (Trial Tr. vol. 3 at 134:4-136:13). Mr. Amspacher discovered that Mr. McGowan worked as a Tower Operator for both Conrail and

---

[4] Ms. Gardner-Lozada testified that Mr. Rodriguez told her that he was later denied the opportunity to interview for a different position at SEPTA because he lacked five years of managerial experience in a transportation related field. (Trial Tr. vol. 1 at 142:7-18). According to Ms. Gardner-Lozada, Mr. Rodriguez found it odd that he was permitted to interview for the Operations Director position but denied the opportunity to interview for a different position with the same minimum requirements. *Id.* Although such testimony was nothing more than hearsay, SEPTA did not object to it and so the jury heard it. This was not the only otherwise inadmissible commentary the jury heard. *See infra* note 10.

SEPTA, and that he had been qualified on the Book of Rules (the predecessor to the NORAC Book of Rules) when he worked in each of those previous positions. (Trial Tr. vol. 3 at 137:17-23). Based on that information, and despite the fact that Mr. McGowan was technically not NORAC qualified at the time he applied, Ms. Van Buren permitted Mr. McGowan to interview for the Operations Director position. (Trial Tr. vol. 3 at 152:5-22). At the time of that decision, neither Ms. Van Buren nor Mr. Amspacher was aware that Ms. Gardner-Lozada had applied for the Operations Director position. (Trial Tr. vol. 3 at 139:17-140:18, 153:8-15). It is undisputed that Ms. Gardner-Lozada had never been NORAC qualified or qualified on the earlier Book of Rules prior to the time she applied for the Operations Director position, and she did not appeal SEPTA's decision not to interview her. (Trial Tr. vol. 1 at 123:9-13; Trial Tr. vol. 2 at 8:21-9:12).

Mr. Johnson, Director of Operations Kim Kennedy (female), and Bernard Koch (male) ultimately interviewed the candidates in Group A. (Trial Tr. vol. 3 at 96:4-99:3). The panel asked each of the applicants the same set of questions and ranked the applicants' responses based on established selection criteria. (Trial Tr. vol. 3 at 96:4-99:3). The rankings were then inserted into a document called the Consensus Panel Ranking Chart, and the highest-ranked candidate—Richard Mahon—was offered the position. (*See* Def.'s Trial Ex. 36; Trial Tr. vol. 3 at 99:4-101:25). Mr. Mahon was NORAC qualified and also was qualified on the Physical Characteristics of the Railroad. (Trial Tr. vol. 1 at 159:4-9; 161:13-19; 159:25-160:3; 164:14-23; 166:22-25). Mr. Mahon, who was also a federally certified locomotive engineer, had extensive experience in railroad operations and a Master's Degree. *Id.* Ms. Gardner-Lozada herself testified that Mr. Mahon was "just as qualified as [she] was" to be Operations Director (Trial Tr. vol. 1 at 159:3), but also testified that that she had helped Mr. Mahon improve his interview

7

skills and that she performs better in interviews than he does. (Trial Tr. vol. 1 at 68:9-69:5, 78:6-14; Trial Tr. vol. 2 at 80:9-81:5).

Mr. Mahon testified at trial that, as Operations Director, he uses his NORAC qualification "just about every day," for purposes such as (1) responding to incidents on the railroad; (2) assessing the scene; (3) managing evacuations; (4) restoring service; and (5) complying with the general protocols governing SEPTA. (Trial Tr. vol. 3 at 161:3-162:24). Mr. Mahon also testified that his NORAC qualification is useful in conducting event recording audits to ensure that the conductors and locomotive engineers are providing safe and efficient train service to SEPTA's passengers. (Trial Tr. vol. 3 at 161:16-162:24).

In late May 2012, Ms. Gardner-Lozada learned that she was not selected to interview for the position. In May 2014, Ms. Gardner-Lozada was promoted to the position of Manager, Railroad Revenue and Parking (grade 42), for which she received a 15-percent increase in salary, raising her annual compensation from $80,002.00 to $92,690.00. (Trial Tr. vol. 1 at 161:24-163:4).

C. PROCEDURAL HISTORY

On June 14, 2012, Ms. Gardner-Lozada filed a Charge of Discrimination with the EEOC and cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). The EEOC confirmed receipt of the Charge by letter dated October 4, 2012. On February 18, 2013, Ms. Gardner-Lozada requested a "Right to Sue" letter. Ms. Gardner-Lozada filed her Complaint on May 20, 2013 and filed an Amended Complaint on October 9, 2013.

After granting partial summary judgment for SEPTA, the Court permitted Ms. Gardner-Lozada's claims of gender discrimination (Counts I & III) and retaliation (Counts II & IV) to proceed to trial. At the close of Plaintiff's case, SEPTA moved for judgment as a matter of law.

The Court took the motion under advisement, but ultimately allowed the case to proceed to the jury. The jury found in favor of SEPTA on the retaliation claim, but found in favor of Ms. Gardner-Lozada on the gender discrimination claim. As explained above, the jury awarded her one dollar ($1.00) in damages. Ms. Gardner-Lozada then filed a Motion for Attorney Fees and Costs (Docket No. 67) and a Motion for Relief and to Make Whole (Docket No. 68). SEPTA also renewed its Motion for Judgment as a Matter of Law (Docket No. 69).

## II. LEGAL STANDARD

### A. MOTION FOR JUDGMENT AS A MATTER OF LAW

The standard of review for a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 is "whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Eddy v. V.I. Water & Power Auth.*, 369 F.3d 227, 230 (3d Cir. 2004). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). The Court may enter judgment as a matter of law following return of a verdict by a jury "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001). That the jury's verdict is to be afforded every consideration is clear.

### B. MOTION FOR A NEW TRIAL

Under Federal Rule of Civil Procedure 59, the Court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal

court." Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial may be "bottomed on the claim that the verdict is against the weight of the evidence . . . or that, for other reasons, the trial was not fair to the party moving; and [it] may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In deciding a motion under Rule 59, the Court undertakes a two-step inquiry. First, the Court determines whether there was error. Second, the Court looks to Rule 61 of the Federal Rules of Civil Procedure and decides whether any error was so prejudicial as to be "inconsistent with substantial justice." Fed. R. Civ. P. 61; *see Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 675-76 (3d Cir. 2002). "Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations . . . ." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).

    C.    *MCDONNELL DOUGLAS* BURDEN-SHIFTING FRAMEWORK

The Court instructed the jury on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and neither party objected on the grounds that the jury should have received a mixed-motive instruction.[5] (Trial Tr. vol. 4, 55:21-56:3, Mar. 19, 2015;

---

[5] "A Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in [*McDonnell Douglas*] or the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." *Makky v. Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008). Under the "pretext" theory, "a jury must be charged that in order to find for the plaintiff, it must conclude that consideration of the impermissible factor was 'a determinative factor' in the adverse employment action." *Watson v. SEPTA*, 207 F.3d 207, 215 (3d Cir. 2000). Under the "mixed-motive" theory, "a plaintiff need only show that the unlawful motive was a 'substantial motivating factor' in the adverse employment action." *Id.* Claims under Title VII and the PHRA are analyzed under the same frameworks. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995).

    Whether to give a mixed-motive or a pretext instruction (or both) is a question of law for the court. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097-98 (3d Cir. 1995). Where the plaintiff produces evidence (direct or circumstantial) that the defendant's employment

Trial Tr. vol. 3 at 197:3-10). Under *McDonnell Douglas*, if a plaintiff establishes a *prima facie* case of discrimination,[6] the defendant must "articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). The plaintiff then has the burden of showing that the defendant's proffered reasons for the adverse action are pretextual. To meet this burden, the plaintiff must present "evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). In other words, the plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005).

---

decision was motivated at least in part by animus toward a protected class, a "mixed-motive" instruction is warranted. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). Where the defendant justifies its employment decision with reference to a non-discriminatory motive and argues that there was no animus at all, the plaintiff bears the burden of proving that the defendant's justification is a pretext and the "mixed-motive" instruction is inappropriate. *See* Matthew Scott & Russell Chapman, *Much Ado About Nothing—Why* Desert Palace *Neither Murdered* McDonnell Douglas *Nor Transformed All Employment Discrimination Cases to Mixed-Motive*, 36 St. Mary's L.J. 395 (2005).

     In this case, there is no direct evidence of gender discrimination, and the circumstantial evidence of gender discrimination does not establish that SEPTA's failure to promote Ms. Gardner-Lozada was partially motivated by an illegitimate reason. SEPTA advances an entirely nondiscriminatory reason for not promoting Ms. Gardner-Lozada to the Operations Director position. Therefore, the Court found the "mixed-motive" instruction to be inappropriate and neither party objected to the Court's decision to instruct the jury on the pretext theory of liability. (Trial Tr. vol. 3 at 197:3-10).

    [6] A plaintiff may establish a *prima facie* case in her gender discrimination claim by showing that (1) she belongs to a protected class; (2) she was qualified for a position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances that raise an inference of discrimination. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

11

"[I]n order to find for the plaintiff, [the jury] must conclude that consideration of the impermissible factor was 'a determinative factor' in the adverse employment action." *Watson v. SEPTA*, 207 F.3d 207, 215 (3d Cir. 2000). In other words, the plaintiff must show that but for his or her membership in a protected class, he or she would not have suffered the adverse action. *See Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 914 (3d Cir. 1983) (noting that Title VII requires "a showing of 'but for' causation in an employment discrimination suit").[7] "At all times the burden of proof or risk of non-persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the employee." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Burdine*, 450 U.S. at 253).

### III. DISCUSSION

Assuming that Ms. Gardner-Lozada presented sufficient evidence to establish a *prima facie* case of gender discrimination,[8] the burden shifts to SEPTA to articulate a legitimate, nondiscriminatory reason for denying her the Operations Director position. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 260 (1981) ("Where the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions."). Here, SEPTA has articulated two legitimate,

---

[7] At oral argument, counsel for Ms. Gardner-Lozada suggested that the plaintiff need not prove "but-for" causation to prevail on a gender discrimination claim. But the Court instructed the jury that it must decide whether Ms. Gardner-Lozada had proven that her gender was a "determinative factor" in SEPTA's decision not to promote her to the Operations Director position, where "[a] determinative factor means that if not for—that is but for—Ms. Gardner-Lozada's gender, SEPTA would have promoted her to be the Director of Railroad Service." (Trial Tr. vol. 4 at 55:21-56:3). Ms. Gardner-Lozada did not object and has never objected to that instruction. (Trial Tr. vol. 3 at 197:3-10). The Court believes that its instruction was appropriate and that it was Ms. Gardner-Lozada burden to prove at trial that, but for her gender, "SEPTA would have promoted her to be the Director of Railroad Service." (Trial Tr. vol. 4 at 55:21-56:3; *see supra* note 4).

[8] Because the Court finds that SEPTA's pretext argument is dispositive, the Court will assume that Ms. Gardner-Lozada made the requisite showing to establish a *prima facie* case of gender discrimination.

nondiscriminatory reasons for declining to promote Ms. Gardner-Lozada to the position of Operations Director. First, SEPTA claims that prior to posting the vacancy for the Operations Director position, it was determined that the first set of applicants to be interviewed for the position would be those who possessed the NORAC qualification. Thus, because Ms. Gardner-Lozada did not possess the NORAC qualification at the time of her application, she was not selected to interview and the position was awarded to an individual who was interviewed because he possessed the NORAC qualification. Second, SEPTA claims that Mr. Mahon was more qualified than Ms. Gardner-Lozada to hold the position of Operations Director. For purposes of the *McDonnell Douglas* framework, these are sufficient legitimate, nondiscriminatory reasons to shift the burden back to Ms. Gardner-Lozada "to show that [SEPTA's] articulated reasons are pretextual." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992).

There were two ways for Ms. Gardner-Lozada to meet her burden. First, she could produce evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." *Fuentes*, 32 F.3d at 762; *see also id.* at 765 (noting that the burden on a plaintiff who chooses to proceed under this prong of *Fuentes* is a "difficult" one). Alternatively, she could produce evidence that "would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Doe*, 527 F.3d at 370. To defeat SEPTA's motion for judgment as a matter of law, Ms. Gardner-Lozada "must present evidence contradicting the core facts put forward by [SEPTA] as the legitimate reason for its decision." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 387 (E.D. Pa. 2013) (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)) (internal quotation marks omitted). The Court will

evaluate Ms. Gardner-Lozada's responses to each of SEPTA's legitimate, nondiscriminatory reasons in turn.

    A.    NORAC QUALIFICATION

With respect to SEPTA's first legitimate, nondiscriminatory reason—the use of the NORAC qualification to identify the most qualified candidates for the Operations Director position who would be invited to participate in the first round of interviews—the Court finds that Ms. Gardner-Lozada has pointed to sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [SEPTA's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [SEPTA] did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal citations and quotation marks omitted). A reasonable jury could have inferred that the use of the NORAC qualification was "a *post hoc* fabrication or otherwise did not actually motivate the employment action," *id.* at 764, because, based on the evidence in the record, it could have found that (1) SEPTA's ordinary practice was to interview every candidate who met the minimum requirements in the job posting; (2) Ms. Gardner-Lozada was selected to interview as a "most qualified candidate" because she met the minimum qualifications, but was then denied an interview based a qualification not listed in the job posting; and (3) Messrs. Rodriguez and Hogan lacked the minimum qualifications to interview for the Operations Director position, but were nevertheless given interviews.[9] Although SEPTA presented compelling evidence from

---

[9] At summary judgment, the Court focused on the fact that Mr. McGowan technically lacked the NORAC qualification, yet was permitted to interview. However, the evidence at trial revealed that he was not similarly situated to Ms. Gardner-Lozada. First, unlike Ms. Gardner-Lozada, Mr. McGowan had previously been qualified on the Book of Rules, the predecessor to NORAC. Second, the decision to permit him to interview was made by Ms. Van Buren and Mr. Amspacher, not the panel that denied Ms. Gardner-Lozada the opportunity to interview, and there is no evidence to suggest that either Ms. Van Buren or Mr. Amspacher were aware that Ms. Gardner-Lozada had applied for the Operations Director position. Thus, no reasonable jury could

which the jury could have reasonably concluded that there was no discrimination, the jury could also have reasonably disbelieved SEPTA's evidence and instead concluded that SEPTA employees invented the NORAC preference after Ms. Gardner-Lozada had applied for the Operations Director position in order to disadvantage her and prevent her from interviewing for the Operations Director position.[10] In other words, the jury could have reasonably believed that SEPTA's first legitimate, nondiscriminatory reason for denying Ms. Gardner-Lozada the interview (and, ultimately, the position) was not the real reason behind its decision.

B.  MR. MAHON WAS MORE QUALIFIED

With respect to SEPTA's second legitimate, nondiscriminatory reason—that Mr. Mahon was more qualified than Ms. Gardner-Lozada to serve as Operations Director—the Court finds that Ms. Gardner-Lozada has failed to demonstrate pretext or otherwise present sufficient evidence from which a jury could reasonably find that she has satisfied her burden. Title VII "does not demand that an employer give preferential treatment to minorities or women" and "was not intended to 'diminish traditional management prerogatives.'" *Burdine*, 450 U.S. at 259 (quoting *Steelworkers v. Weber*, 443 U.S. 193, 205-06 (1979)). As a result, "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Id.* Here, the evidence in the record demonstrates that Mr. Mahon was at least as qualified as Ms. Gardner-Lozada to be the Operations Director. For example, when the job was posted, both Mr. Mahon and Ms. Gardner-Lozada had Master's Degrees, (Trial Tr. vol. 1 at 167:3-6), and both held the position of Assistant Director of Transportation. Even Ms. Gardner-

---

have concluded from the circumstances surrounding Mr. McGowan's appeal that Mr. McGowan was a similarly situated male employee who was treated more favorably than Ms. Gardner-Lozada such that the NORAC preference was pretext for gender discrimination against Ms. Gardner-Lozada.

[10] Indeed, SEPTA's task likely became more difficult when SEPTA failed to object to otherwise inadmissible commentary in Plaintiff's opening statement. (*See* Trial Tr. vol. 1 at 3:7-4:22).

Lozada testified that Mr. Mahon was "just as qualified as [she] was" to become Operations Director. (Trial Tr. vol. 1 at 159:3). Whether or not a particular employer would have selected one qualified candidate over another qualified candidate, in the absence of evidence that the decision was based on unlawful criteria,[11] is within the employer's discretion, and it would be improper for the jury to "sit as a super-personnel department that examines an entity's business decisions." *Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 185 (3d Cir. 2012); *see Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001) ("[I]t is not

---

[11] The inconsistencies in the process for selecting who would be interviewed, *see supra* Part III. A, are insufficient for a reasonable jury to find that Ms. Gardner-Lozada would have been promoted to the Operations Director position but for her gender. They may have been enough if Ms. Gardner-Lozada had presented evidence that SEPTA was not actually interested in hiring the "most qualified" applicant or had previously made hiring decisions where the "most qualified" applicant was not selected, such that SEPTA's claim that it hired Mr. Mahon because he was the most qualified applicant could be reasonably disbelieved. *See, e.g.*, *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir. 1997) (Alito, J., dissenting). However, even assuming that there is evidence that unqualified applicants were permitted to interview for the Operations Director position, it is undisputed that those allegedly unqualified applicants were the lowest-ranked interviewees, (*see* Def.'s Trial Ex. 36), and SEPTA ultimately selected a qualified applicant for the position. From such evidence, a reasonable jury could infer at most that SEPTA's stated reason for not *interviewing* Ms. Gardner-Lozada was unworthy of credence. It is not enough to show that SEPTA's legitimate, nondiscriminatory reason for *hiring* Mr. Mahon instead of Ms. Gardner-Lozada—that is, that Mr. Mahon was the most qualified applicant—was pretext.

At trial, Ms. Gardner-Lozada advanced a failure-to-promote theory of liability, *not* a failure-to-interview theory of liability. The Court instructed the jury on the failure-to-promote issue, and Ms. Gardner-Lozada did not object to those instructions. (*See* Trial Tr. vol. 4 at 55:22-56:3; Trial Tr. vol. 3 at 197:3-10). While the Court appreciates the potential irony in finding that SEPTA is entitled to judgment as a matter of law because Ms. Gardner-Lozada did not prove that she would have excelled in the interview that she was denied, it is also apparent that Ms. Gardner-Lozada chose her theory of the case so that she could recover back pay as an element of damages. (*See* Pl.'s Mot. for Relief and to Make Whole, ECF No. 68). Ms. Gardner-Lozada could have identified SEPTA's failure to interview her as the alleged adverse action supporting her claim of gender discrimination, but that would have limited her recovery to damages attributable to SEPTA's decision not to interview her (e.g., the embarrassment or damage to her reputation arising from not being selected to interview). Unless she could prove that denying her the opportunity to interview also denied her the Operations Director position—the same showing required under the failure-to-promote theory—she would not have been entitled to back pay. By proceeding solely on a failure-to-promote theory, Ms. Gardner-Lozada appears to have taken a calculated risk. Unfortunately for her, she has presented insufficient evidence for that risk to pay off.

enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus.").

Moreover, to say that Ms. Gardner-Lozada and Mr. Mahon were equally qualified to be Operations Director would be to ignore the substantial, undisputed evidence in the record that Mr. Mahon was *more* qualified than Ms. Gardner-Lozada to be Operations Director. In contrast to Ms. Gardner-Lozada, who acknowledged at trial that her knowledge of operations was "limited" because she had "never worked in the field," Mr. Mahon "had over 20 years experience in the railroad operations," "was fully qualified in NORAC Book of Rules," "was a certified engineer," and "was also a Transportation Manager." (Trial Tr. vol. 3 at 99:11-17). Mr. Mahon was able to operate and move trains, and Ms. Gardner-Lozada was not. (Trial Tr. vol. 3 at 159:19-24). Mr. Mahon was qualified on the physical characteristics of the railroad, and Ms. Gardner-Lozada was not. (Trial Tr. vol. 3 at 161:13-19). Mr. Mahon was the only SEPTA employee who could handle FRA Decertification Hearings, and was one of the few SEPTA employees who could perform event recording audits. (Trial Tr. vol. 3 at 164:24-166:3, 166:16-21). Ms. Gardner-Lozada could not perform either of those tasks. Thus, Ms. Gardner-Lozada "may disagree with the wisdom, fairness, or correctness of [SEPTA's] actions, but disagreement, without more, does not rebut [SEPTA's] legitimate non-discriminatory reasons for its actions." *Igwe v. E.I. DuPont De Nemours & Co.*, 180 F. App'x 353, 356 (3d Cir. 2006). Consequently, the evidence in the record cannot support the jury's apparent conclusion that Ms. Gardner-Lozada was more qualified than Mr. Mahon to be Operations Director.

Ms. Gardner-Lozada argues that a reasonable jury could have found that she would have been hired instead of Mr. Mahon because she testified that all candidates are treated equally at the interview stage and, in her opinion, she generally performs better than Mr. Mahon at

interviews. However, the high regard in which Ms. Gardner-Lozada holds her own interviewing skills is not sufficient evidence from which the jury could reasonably have concluded that she would have outperformed Mr. Mahon at an interview. There is no evidence in the record from which the jury could reasonably find that SEPTA's interviewers would have been more impressed by Ms. Gardner-Lozada's interview skills than Mr. Mahon's answers to the interview questions. As counsel for Ms. Gardner-Lozada pointed out at oral argument, there is no evidence in the record regarding the questions that were asked, the substance of Mr. Mahon's answers to those questions, how Ms. Gardner-Lozada would have responded to those questions, and whether or not the interview panel would have rated Ms. Gardner-Lozada's answers higher than Mr. Mahon's. Ms. Gardner-Lozada claims that the jury could have found that she would have performed better at an interview by comparing her performance as a witness at trial to Mr. Mahon's performance as a witness, but without any evidence regarding the questions that were asked, the criteria used to evaluate the interviewees, or how Ms. Gardner-Lozada would have answered those questions, the jury's apparent conclusion that Ms. Gardner-Lozada would have outperformed Mr. Mahon at the interview stage amounts to nothing more than speculation.

Based on the trial record, it was unreasonable for the jury to find that Ms. Gardner-Lozada's gender was a determinative factor in SEPTA's decision to hire Mr. Mahon instead of her. In other words, as a matter of law, Ms. Gardner-Lozada failed to prove that she would have been promoted to the Operations Director position but for her gender.

## IV.   CONCLUSION

In light of Mr. Mahon's credentials and Ms. Gardner-Lozada's admission that Mr. Mahon was at least as qualified as she was to become Operations Director, there is simply not enough evidence in the record for a reasonable jury to find that Ms. Gardner-Lozada would have been

promoted to the Operations Director position but for her gender, or that SEPTA's legitimate, nondiscriminatory reason for failing to promote Ms. Gardner-Lozada—that Mr. Mahon was more qualified for the position—was pretext. As a result, the Court will grant judgment as a matter of law in favor of SEPTA.

                                                BY THE COURT:

                                                <u>S/Gene E.K. Pratter</u>
                                                GENE E.K. PRATTER
                                                UNITED STATES DISTRICT JUDGE